UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
Caption in Compliance with D.N.J. LBR 9004-2(c)

**McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
Louis A. Modugno
Telephone: (973) 425-8660
Facsimile: (973) 425-0161
lmodugno@mdmc-law.com

*Proposed Counsel for debtor in possession
Jonas Werner Construction LLC*

| | |
|---|---|
| In re: | Case No. |
| JONAS WERNER CONSTRUCTION LLC, | Chapter 11 |
| Debtor. | Hon.                    , U.S.B.J. |

**DEBTOR'S MOTION FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 363,
FED. R. BANKR. P. 2002 AND 6004, AND D.N.J. LBR 6004-5: (I) AUTHORIZING THE
PRIVATE SALE OF THE DEBTOR'S REAL PROPERTY LOCATED AT 44 ECHO
RIDGE DRIVE, UPPER SADDLE RIVER, NJ 07458, AS IS, WHERE IS, FREE AND
CLEAR OF INTERESTS, CLAIMS, ENCUMBRANCES, AND LIENS, SUBJECT TO
HIGHER AND BETTER OFFERS, WITH SAID LIENS TO ATTACH TO PROCEEDS
OF THE SALE; (II) AUTHORIZING PAYMENT OF THE AGREED UPON
COMMISSION TO THE ENGAGED REAL ESTATE BROKER UPON THE CLOSING
OF THE SALE OF THE PROPERTY; (III) AUTHORIZING PAYMENT OF SECURED
CREDITOR'S LIEN; AND
(IV) WAIVING THE 14-DAY STAY PURSUANT TO FED. R. BANKR. P. 6004(h)**

The above-captioned debtor in possession, Jonas Werner Construction, LLC (the

"Debtor"), by and through its proposed undersigned attorneys, McElroy, Deutsch, Mulvaney &

Carpenter, LLP, hereby moves this Court under §§ 105(a) and 363 of title 11 of the United States

Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rule(s)"), and D.N.J. LBR 6004-5 for entry of an Order: (i)

authorizing the private sale of the Debtor's real property located at 44 Echo Ridge Drive, Upper

Saddle River, NJ 07458 (the "Property") as is, where is, free and clear of claims, encumbrances, with said liens to attach to the proceeds of the sale; (ii) authorizing payment of the agreed upon commission of $29,944.40 to the engaged real estate broker, Joshua Baris, of Coldwell Banker Residential Brokerage (the "Broker");[1] (iii) authorizing payment of the mortgage lien held by Noor Heravi ("Heravi") which encumbers the subject Property; and (iv) waiving the 14-day stay. In support of this sale motion (the "Motion"), the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).  Venue is proper under 28 U.S.C. § 1408 and 1409.

2. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a) and 363, Bankruptcy Rules 2002 and 6004, and D.N.J. LBR 6004-5.

## RELEVANT BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey.

4. The Debtor is a New Jersey limited liability company which constructs and sells luxury residential properties and continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. The Debtor owns the Property, located at 44 Echo Ridge Drive, Upper Saddle River, NJ 07458, by virtue of a deed dated January 26, 2017 and recorded February 14, 2017 in the Office of the Clerk for Bergen County, Deed Book 2535, Page 107.

---

[1] The Debtor has filed a contemporaneous application to employ the Broker.

6.  The Property is subject to a mortgage in favor of Heravi, recorded on April 4, 2017 in the Office of the Bergen County Clerk, at Book 2580, Pages 5-11. The approximate amount owed on the mortgage as of the Petition Date is $500,000.[2]

7.  The Property is also subject to the judgment lien of Castle Developers, LLC in the amount of $268,476.70 (the "Judgment Lien").[3] However, as of the Petition Date, the Judgment Lien remained unperfected under New Jersey law. Therefore, the Debtor disputes the purportedly secured status of the Judgment Lien and has contemporaneously filed an adversary complaint to avoid the lien pursuant to section 544(a) of the Bankruptcy Code.

8.  In addition, the Property is potentially subject to a claim by PJML Realty, LLC ("PJML"). On or about December 15, 2017, without the knowledge, authorization, or consent of the Debtor's current sole member Paul Kevin Jonas II ("Jonas"), now-dissociated member Wilfried Werner ("Werner") signed an agreement, on behalf of the Debtor, to create 44 Echo Ridge, LLC (the "LLC") wherein the two members of the LLC, each with a 50% interest, would be the Debtor and PJML. On or about December 15, 2017, without Jonas' knowledge, authorization, or consent, Werner also signed a deed on behalf of the Debtor, transferring ownership of the Property for $1 to the LLC. On or about the same date, Werner, on behalf of the Debtor and without Jonas' knowledge, authorization, or consent, signed an agreement whereby PJML would pay an initial capital contribution of $250,000 to the Debtor in order to purchase an interest in the

---

[2] The mortgage also includes a provision for the assessment of late fees. The purported amounts due and owed under this provision have not been calculated.

[3] On October 13, 2017, Castle Developers, LLC commenced a lawsuit against the Debtor in the Superior Court of New Jersey, Law Division for Bergen County, captioned *Castle Developers, LLC v. Jonas Werner Construction, LLC and Wilfried Werner*, at case number BER-L7041017. On February 28, 2018, final judgment by default was entered by the Superior Court in favor of Castle Developers, LLC. It should be noted that Plaintiff paid $150,000 to Defendant prior to the entry of judgment by the Superior Court and seeks a reduction and the subordination of Castle Developers' claim.

Property. The Debtor disputes the validity of any claim by PJML as against the Property given Werner's fraudulent and unauthorized conveyance of the deed, which in any event remains unrecorded.

1.  And the Property is potentially subject to claims by Etienne Emirzian ("Etienne") and H&I Developers, LLC ("H&I"). On or about December 26, 2017, again without Jonas' knowledge, authorization, or consent, now-dissociated member Werner signed an agreement, on behalf of the Debtor, with Emirzian, which provided, among other things, that Emirzian would provide Debtor with a $250,000 investment, and that the parties' respective percentage of ownership of the Property would be determined by the amount of their ultimate investment. Thereafter, on or about the same date, and without Jonas' knowledge, authorization, or consent, Emirzian caused a payment to be made by H&I Developers, LLC ("H&I") to the Debtor.

9.  On April 18, 2018, Emirzian and H&I commenced a lawsuit against the Debtor, Werner and Jonas. Subsequently, on or about May 8, 2018, Emirzian and H&I filed a notice of lis pendens against the Property in the Office of the Clerk for Bergen County, Book 2835, Page 462. Given the above noted fraudulent and unauthorized acts by Werner, the Debtor disputes the validity of the parties' agreement and any claim by Emirzian or H&I against the Property.

10. The Debtor has sought to receive the greatest value for the Property and retained the Broker to engage in an extensive sale process prior to the commencement of this Chapter 11 case. Thereafter, the Broker marketed the Property on the New Jersey Multiple Listing Service ("NJMLS") and the Debtor ultimately engaged in negotiations

4

with Bartosz Ciszkowski (the "Buyer") regarding purchase of the Property.[4] As a result of these negotiations, the Buyer has entered into a contract to purchase the Property for $598,888 (the "Sale Agreement").[5] The Debtor asserts that a private sale of the Property to the Buyer is in the best interests of the bankruptcy estate.

## TERMS OF THE SALE AGREEMENT

11. The pertinent terms of the Sale Agreement are as follows:[6]

    a.  The purchase price shall be $598,888;

    b.  A payment in the amount of $59,888 has been deposited and is being held in escrow by Debtor's counsel in a non-interest-bearing trust account;

    c.  The balance of the purchase price shall be paid in cash, attorney trust account, certified, or cashier's check to the Debtor at closing;

    d.  At closing, the Debtor shall deliver to the Buyer a duly executed quit claim deed with covenant as to the Debtor's acts or other deed satisfactory to Buyer. Title to the Property shall be free from all claims or rights of others;

    e.  The sale is "where is" and "as is," and free of liens and encumbrances, with liens and encumbrances to attach to the proceeds of the sale;

    f.  The risk of loss or damage to the Property by fire or otherwise, except ordinary wear and tear, is the responsibility of the Debtor until the closing;

    g.  Buyer shall be responsible for obtaining the Certificate of Occupancy, or other similar certificate required by the Borough of Upper Saddle River for the transfer

---

[4] A dual agent scenario has arisen because the Broker represents both the Debtor and the Buyer in the proposed purchase of the Property. However, upon engaging the Broker to market and sell the Property, and upon engaging the Broker to provide prospective properties for purchase, both the Debtor and Buyer, respectively, consented to the Broker acting as a dual agent were the situation to arise.

[5] The Sale Agreement is attached hereto as Debtor's Exhibit "A."

[6] References to the Sale Agreement are qualified in their entirety by the Sale Agreement itself and to the extent that there is any discrepancy between the descriptions of the sale contained herein and in the Sale Agreement, the Sale Agreement shall control. Capitalized terms not defined herein shall have the meanings ascribed to them in the Sale Agreement.

of the property to Buyer, only up to an aggregate cost of $1,000. Any cost incurred in excess of $1,000 may be paid by the Debtor. If the cost to obtain the Certificate of Occupancy in the aggregate exceeds $5,000, either party may terminate the contract;

h. The Sale Agreement contains the entire agreement of the parties. No representations have been made by any of the parties, the Broker, or its salespersons, except as set forth in the Sale Agreement. The Sale Agreement is binding upon all parties who sign it and all who succeed to their rights and responsibilities and only may be amended by an agreement in writing signed by the Debtor and Buyer;

i. The Debtor and Buyer agree that all dates and times specified within the Sale Agreement are of the essence; and

j. An Order of this Court approving the sale of the Property must be issued prior to the closing.

12. Based on the information currently available, the Debtor asserts that the distribution of the sale proceeds would pay Heravi's mortgage lien in full.

## SUBJECT TO HIGHER AND BETTER OFFERS

13. Although the Debtor believes that the Sale Agreement with the Buyer is fair and reasonable and reflects the highest and best value for the Property as of the date of this motion, and although the Debtor has previously marketed the Property through its Broker and on NJMLS, the Debtor nevertheless desires to test the proposed sale once again in the

broader public marketplace in the hope that higher and better offers are generated for the Property.

14. Accordingly, the Debtor has directed the Broker to provide any potential purchasers with a copy of the Motion, to the extent that the Broker has or will obtain sufficient contact information for such potential purchasers.[7] The Debtor requests that an auction be held on the return date of this Motion should there be any other interested purchasers.

15. The Debtor requests that if any party is interested in making a competing bid, it should contact the Broker by September 10, 2018 at 12:00 p.m. EST and arrive at the auction to be scheduled on the return date of this Motion with a certified check in the amount of $62,883.24, representing 10% of an offer of $628,832.40 for the purchase of the subject Property, payable to McElroy, Deutsch, Mulvaney & Carpenter, LLP, counsel for Jonas Werner Construction LLC. Such an offer would represent a five percent (5%) increase from the Buyer's proposed purchase price.

## RELIEF REQUESTED

16. Section 363(b)(1) of the Bankruptcy Code governs the sale of assets outside the ordinary course of business and provides that "[t]he [Debtor] after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."[8]

---

[7] The Broker will serve a copy of the Motion on individuals for which the broker has their contact information and their brokers. The Broker does not have the contact information for every individual who expressed an interest in the Property.
[8] Bankruptcy Rule 6004(f)(1) also authorizes sales outside of the ordinary course of business to be conducted privately or by public auction.

**I.  The Sale is within the Debtor's Sound Business Judgment**

17. Beyond requiring notice and a hearing, the Bankruptcy Code does not set forth a standard for approving the sale of assets of the estate.  Courts within the Third Circuit have held that approval of a proposed sale is appropriate if there is a good business reason for the transaction.[9]

18. It is not necessary for a showing of sound business justification to be exhaustive.  Instead, a debtor is simply required to justify the proposed disposition of an asset with sound business reasons.[10]

19. In this matter, the Debtor seeks to liquidate the Property for the purpose of paying Heravi's mortgage lien in full and bringing this case to a swift conclusion.  There are multiple sound business reasons for the private sale for which the Debtor seeks approval, including, but not limited to, the following:  (i) sale of the property will immediately bring funds into the estate for the benefit of the Debtor's estate; (ii) the sale will remove the burden upon the Debtor and the bankruptcy estate of carrying costs associated with the Property; (iii) the sale and subsequent repayment of Heravi's mortgage will stop the accruement of any additional potential interest owed by the Debtor; and (iv) the ability to consummate this sale represents a substantial accomplishment in this case which will bring it closer to conclusion and would insure to the benefit of all parties in interest.

**II.  The Buyer is a Good Faith Purchaser under section 363(m)**

20. In addition to requiring sound business judgment, courts within the Third Circuit are required to make a finding with respect to the good faith of the purchaser.[11]  Courts have

---

[9] *See, e.g., In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (finding that 363(b) requires a court to expressly find from the evidence presented a good business reason to grant the application); *In re Industrial Valley Refrig. & Air Conditioning Supplies, Inc.*, 77 B.R. 15, 21 (Bankr. E.D.Pa. 1987) (holding that the sale proponent must show a sound business purpose and that all of the requirements of section 363(b)(1) have been met).

[10] *See In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr S.D.Ohio 1984).

construed a good faith purchaser to be one who purchasers in good faith and for value.[12] The good faith requirement pertains to conduct related to the sale proceedings and "[t]ypically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly unfair advantage of other bidders."[13]

21. The sale of the Debtor's Property to the Buyer, pursuant to the terms set forth in the Sale Agreement, satisfies the requirements for good faith as articulated by the Third Circuit.

22. The Buyer is unrelated to the Debtor, who contends through its independent investigation that the proposed sale is for value, is not the result of bad faith on the part of the Broker or the Buyer, is the best outcome for the estate, and is in the best interest of creditors.

23. The negotiations between the Debtor and the Buyer were in good faith and at arm's length and the parties have fully disclosed and requested the Court's approval of the Sale Agreement.  There has been no fraud or collusion between the Buyer and the Debtor, and no evidence to the contrary has been presented.  Thus, the Buyer should be deemed a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code.

24. Consideration of the above factors in this case weighs heavily in favor of approval. Because the sale is subject to higher and better offers, it is ensured that the Debtor will receive the maximum value for the Property and that the purchase price the estate realizes will be fair and reasonable.

**III. The Debtor should be authorized to sell the Property free and clear of all liens**

---

[11] *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 768 F.2d 143, 149-50 (3d Cir. 1986).
[12] *Id.* at 147.
[13] *Id.* (quoting *In re Rock Industries Mach. Corp.,* 572 F.2d 1195, 1998 (7th Cir. 1978)).

25. Section 363(f)(3) of the Bankruptcy Code authorizes the Debtor to sell property of the estate free and clear of liens if "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property[.]"

26. The Debtor is also authorized to sell property of the estate free and clear of liens if "such interest is in bona fide dispute" pursuant to section 363(f)(4).

27. The only properly perfected lien encumbering the Property is Heravi's mortgage, which will be satisfied from the proceeds of the sale and can attach to said proceeds with the same validity, force, and effect that it now has as against the Property.

28. Because the Judgment Lien was not properly perfected as of the Petition Date, the Debtor has sought to avoid the lien and has raised a bona fide dispute as to the lien's secured status against the Property.[14]

29. Similarly, because Werner's conveyance of the Property deed to the LLC was fraudulent and unauthorized, and because the deed was not recorded, any claim by PJML as against the Property is in bona fide dispute.

30. And because Werner's entry into an agreement with Emirzian and H&I was fraudulent and unauthorized, the lis pendens and associated claims by Emirzian and H&I as against the Property are in bona fide dispute.[15]

---

[14] And even if the Judgment Lien had been properly perfected against the Property, the Debtor could still sell the Property free and clear of all liens, claims, and encumbrances pursuant to section 363(f)(5) because the sale is at a price equal to the value of the Property. Section 363(f)(5) provides that the Debtor may sell the Property free and clear of interests therein if the holder of such interest "could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." Construing the reference to the phrase "money satisfaction of such interest" to include payment of less than the full payment of the debt, a number of courts have ruled that foreclosure proceedings under state law can satisfy section 363(f)(5)'s condition. *See, e.g. In re Boston Generating, LLC*, 440 B.R. 302, 333 (Bankr. S.D.N.Y. 2010) (noting that "the existence of judicial and nonjudicial foreclosure and enforcement actions under state law can satisfy section 363(f)(5)"); *In re Jolan, Inc.*, 403 B.R. 866 (Bankr. W.D.Wash. 2009) (bankruptcy court authorized sale of real estate free and clear of junior lienholders interests because state law providing for judicial and nonjudicial foreclosures would clear their interests.).

[15] Even if the propriety of the lis pendens and associated claims of Emirzian and H&I were not in bona fide dispute, section 363(f)(5) provides that the Debtor may sell the Property free and clear of their interests therein.

31. Based on the foregoing, the Court should approve the proposed sale by the Debtor to the Buyer of the subject Property. If no objection is raised, the Debtor should be authorized the sell the Property free and clear of all liens, claims, and encumbrances, with said liens, claims, or encumbrances to attach to the proceeds of the Property sale to the Buyer.

## IV. Authorizing Payment of the Agreed Upon Commission to the Broker

32. Pursuant to D.N.J. LBR 6004-5, a motion for approval of the private sale of property may also include a request to pay a commission or fee at closing to a professional person retained to provide services relating to the sale.

33. Given the Debtor's limited understanding of the residential real estate market, it was necessary to retain the Broker to market and sell the Property. Thereafter, the Broker undertook an extensive marketing process of the Property and identified several prospective purchasers. Ultimately, the Buyer presented the highest and best offer of $598,888.

34. Under the terms of the parties' real estate listing/commission agreement, the Broker is entitled to compensation of $29,944.40, which equals five percent (5%) of the Property's sale price. Accordingly, the Debtor respectfully requests that the Court authorize the Debtor's payment upon sale closing of $29,944.40 to the Broker.

## V. Waiver of the 14-Day Stay

35. Pursuant to Bankruptcy Rule 6004(h), unless a court orders otherwise, orders authorizing the sale of assets pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen (14) days after entry of the order. The purpose of Bankruptcy Rule

6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.

36. The fourteen-day period may be eliminated to allow a sale or transaction to close immediately. The Debtor contends that given the goal of liquidating the Property and bringing this case to a swift conclusion, there is sufficient cause to waive the stay and the Debtor requests that upon approval of the Sale Agreement, the fourteen (14) day stay period under Rule 6004(h) be waived by the Court.

### NOTICE

37. Notice of the motion will be served upon the following parties: (i) the Office of the United States Trustee for the District of New Jersey; (ii) Buyer's counsel; (iii) any entity holding a properly perfect lien against the Property, consisting solely of Heravi; (iv) the Judgment Lien holder; (v) PJML; (vi) Emirzian and H&I; (vii) all parties who have filed requests for notice under Rule 2002; and (viii) interested parties, as determined by the Debtor.

### CONCLUSION

38. Sale of the Property to the Buyer furthers the Debtor's objective to quickly exit bankruptcy while maximizing benefit to the estate. Authorizing the Debtor to enter into the Sale Agreement will bring funds into the estate to pay creditors, while removing the burden of carrying costs of the Property. The Debtor submits that there are sound business purposes for the sale to the Buyer and that the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and controlling case law have been met.

12

**WHEREFORE,** the Debtor respectfully requests that the Court grant the motion and enter an Order: (i) authorizing the private sale of the Debtor's real property located at 44 Echo Ridge Drive, Upper Saddle River, NJ 07458 as is, where is, free and clear of claims, encumbrances, with said liens to attach to the proceeds of the sale (or in a higher amount if there is a higher offer which is approved by the Court); (ii) authorizing payment of the agreed upon commission of $29,944.40 to the engaged real estate broker, Joshua Baris, of Coldwell Banker Residential Brokerage; (iii) authorizing payment of the mortgage lien held by Noor Heravi which encumbers the subject Property; and (iv) waiving the 14-day stay.

Dated: <u>August 24, 2018</u>

Respectfully submitted,

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

<u>*s/ Louis A. Modugno*</u>
Louis A. Modugno, Esq.
1300 Mt. Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962
Telephone: (973) 425-8660
Facsimile: (973) 425-0161
lmodugno@mdmc-law.com
*Proposed Counsel for debtor in possession*
*Jonas Werner Construction LLC*

# EXHIBIT "A"

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

# NOTICE
## TO BUYER AND SELLER
### READ THIS NOTICE BEFORE SIGNING THE CONTRACT

The Law requires real estate brokers to give you the following information before you sign this contract. It requires us to tell you that you must read all of it before you sign. The purpose is to help you in this purchase or sale.

1) As a real estate broker, I represent: ☐ the seller, not the buyer;   ☐ the buyer, not the seller;
   ☒ both the seller and the buyer;   ☐ neither the seller nor the buyer.
   The title company does not represent either the seller or the buyer.

2) You will not get any legal advice unless you have your own lawyer. Neither I nor anyone from the title company can give legal advice to either the buyer or the seller. If you do not hire a lawyer, no one will represent you in legal matters now or at the closing. Neither I nor the title company will represent you in those matters.

3) The contract is the most important part of the transaction. It determines your rights, risks, and obligations. Signing the contract is a big step. A lawyer would review the contract, help you to understand it, and to negotiate its terms.

4) The contract becomes final and binding unless your lawyer cancels it within the following three business days. If you do not have a lawyer, you cannot change or cancel the contract unless the other party agrees. Neither can the real estate broker nor the title insurance company change the contract.

5) Another important service of a lawyer is to order a survey, title report, or other important reports. The lawyer will review them and help to resolve any questions that may arise about the ownership and condition of the property. These reports and survey can cost you a lot of money. A lawyer will also prepare the documents needed to close title and represent you at the closing.

6) A buyer without a lawyer runs special risks. Only a lawyer can advise a buyer about what to do if problems arise concerning the purchase of this property. The problems may be about the seller's title, the size and shape of the property, or other matters that may affect the value of the property. If either the broker or the title company knows about the problems, they should tell you. But they may not recognize the problem, see it from your point of view, or know what to do. Ordinarily, the broker and the title company have an interest in seeing that the sale is completed, because only then do they usually receive their commissions. So, their interests may differ from yours.

7) Whether you retain a lawyer is up to you. It is your decision. The purpose of this notice is to make sure that you have the information needed to make your decision.

| | | |
|---|---|---|
| _DocuSigned by:_ | 8/2/2018 | _DocuSigned by:_ | 7/26/2018 8:28:22 PM PDT |
| **SELLER** DATE | | **BUYER** DATE |
| **Jonas Werner Construction Llc** | | **Bartosz Ciszkowski** |

| | | | |
|---|---|---|---|
| **SELLER** | DATE | **BUYER** | DATE |

| | | | |
|---|---|---|---|
| **SELLER** | DATE | **BUYER** | DATE |

| | | | |
|---|---|---|---|
| **SELLER** | DATE | **BUYER** | DATE |

| | | |
|---|---|---|
| _DocuSigned by:_ | 7/26/2018 8:49:26 PM PDT | _DocuSigned by:_ | 7/26/2018 8:49:45 PM PDT |
| **Listing Broker** | | **Selling Broker** |
| **Joshua Baris** | | **Joshua Baris** |

Prepared by: **Joshua Baris**
Name of Real Estate Licensee

New Jersey Realtors® Form 118-Statewide 1/18 Page 1 of 13

CBRB - Fort Lee, 375 Park Avenue, Suite 21 Fort Lee NJ 07024    Phone: (201)334-8060    Fax: (201)461-6509    44 Echo Ridge Rd
Yuliya Zaynulina            Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B



## STATEWIDE NEW JERSEY REALTORS® STANDARD FORM
## OF REAL ESTATE SALES CONTRACT

©2016 New Jersey REALTORS®, Inc.
**THIS FORM MAY BE USED ONLY IN THE SALE OF A ONE TO FOUR-FAMILY RESIDENTIAL PROPERTY
OR VACANT ONE-FAMILY LOTS. THIS FORM IS SUITABLE FOR USE ONLY WHERE THE SELLER HAS
PREVIOUSLY EXECUTED A WRITTEN LISTING AGREEMENT.**

**THIS IS A LEGALLY BINDING CONTRACT THAT WILL BECOME FINAL WITHIN THREE BUSINESS DAYS.
DURING THIS PERIOD YOU MAY CHOOSE TO CONSULT AN ATTORNEY WHO CAN REVIEW AND CANCEL THE
CONTRACT. SEE SECTION ON ATTORNEY REVIEW FOR DETAILS.**

### TABLE OF CONTENTS

| | | |
|---|---|---|
| 1. PARTIES AND PROPERTY DESCRIPTION | 15. CESSPOOL REQUIREMENTS | 29. DECLARATION OF BROKER(S) BUSINESS RELATIONSHIP(S) |
| 2. PURCHASE PRICE | 16. INSPECTION CONTINGENCY CLAUSE | 30. BROKERS' INFORMATION AND COMMISSION |
| 3. MANNER OF PAYMENT | 17. MEGAN'S LAW STATEMENT | 31. EQUITABLE LIEN |
| 4. SUFFICIENT ASSETS | 18. MEGAN'S LAW REGISTRY | 32. DISCLOSURE THAT BUYER OR SELLER IS A REAL ESTATE LICENSEE |
| 5. ACCURATE DISCLOSURE OF SELLING PRICE | 19. NOTIFICATION REGARDING OFF-SITE CONDITIONS | 33. BROKERS TO RECEIVE CLOSING DISCLOSURE AND OTHER DOCUMENTS |
| 6. ITEMS INCLUDED IN SALE | 20. AIR SAFETY AND ZONING NOTICE | 34. PROFESSIONAL REFERRALS |
| 7. ITEMS EXCLUDED FROM SALE | 21. BULK SALES | 35. ATTORNEY-REVIEW CLAUSE |
| 8. DATES AND TIMES FOR PERFORMANCE | 22. NOTICE TO BUYER CONCERNING INSURANCE | 36. NOTICES |
| 9. CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE | 23. MAINTENANCE AND CONDITION OF PROPERTY | 37. NO ASSIGNMENT |
| 10. MUNICIPAL ASSESSMENTS | 24. RISK OF LOSS | 38. ELECTRONIC SIGNATURES AND DOCUMENTS |
| 11. QUALITY AND INSURABILITY OF TITLE | 25. INITIAL AND FINAL WALK-THROUGHS | 39. CORPORATE RESOLUTIONS |
| 12. POSSESSION, OCCUPANCY AND TENANCIES | 26. ADJUSTMENTS AT CLOSING | 40. ENTIRE AGREEMENT; PARTIES LIABLE |
| 13. LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARD | 27. FAILURE OF BUYER OR SELLER TO CLOSE | 41. APPLICABLE LAWS |
| 14. POINT OF ENTRY TREATMENT SYSTEMS | 28. CONSUMER INFORMATION STATEMENT ACKNOWLEDGEMENT | 42. ADDENDA |
| | | 43. ADDITIONAL CONTRACTUAL PROVISIONS |

**1.  PARTIES AND PROPERTY DESCRIPTION:**

Bartosz Ciszkowski _____ ("Buyer"), _____, ("Buyer"),

_____ ("Buyer"), _____, ("Buyer"),

whose  address  is/are  47 Hillcrest ave , Montvale, NJ  07026 _____

**AGREES TO PURCHASE FROM**

Jonas Werner Construction Llc _____ ("Seller"), _____, ("Seller"),

_____ ("Seller"), _____, ("Seller"),

whose  address  is/are  44 Echo Ridge Dr, Upper Saddle, NJ  07458 _____

**THROUGH THE BROKER(S) NAMED IN THIS CONTRACT AT THE PRICE AND TERMS STATED BELOW, THE
FOLLOWING PROPERTY:**
Property  Address:  44 Echo Ridge Dr, Upper Saddle River, NJ _____

shown in the municipal tax map of _____ **Upper Saddle River** _____ County _____ **Bergen** _____

as Block _____ **00916** _____ Lot _____ **00011** _____ (the "Property").
**THE WORDS "BUYER" AND "SELLER" INCLUDE ALL BUYERS AND SELLERS LISTED ABOVE.**

**2.  PURCHASE PRICE:**

| | |
|---|---|
| TOTAL PURCHASE PRICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 598,888.00 |
| INITIAL DEPOSIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ |
| ADDITIONAL DEPOSIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 59,888.00 |
| MORTGAGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ |
| BALANCE OF PURCHASE PRICE . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 539,000.00 |

New Jersey Realtors® Form 118-Statewide 1/18 Page 2 of 13        Buyer's Initials: _____    Seller's Initials: _____

44 Echo Ridge Rd

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

**3. MANNER OF PAYMENT:**

**(A) INITIAL DEPOSIT** to be paid by Buyer to ☐ Listing Broker ☐ Participating Broker ☐ Buyer's Attorney ☐ Title Company ☐ Other n/a , on or before _____ (date) (if left blank, then within five (5) business days after the fully signed Contract has been delivered to both Buyer and the Seller).

**(B) ADDITIONAL DEPOSIT** to be paid by Buyer to the party who will be responsible for holding the escrow who is identified below on or before _____7 days after AR_____ (date) (if left blank, then within ten (10) calendar days after the fully signed Contract has been delivered to both the Buyer and the Seller).

**(C) ESCROW:** All initial and additional deposit monies paid by Buyer shall be held in escrow in the **NON-INTEREST BEARING TRUST ACCOUNT of** _____seller's attorney_____ , ("Escrowee"), until the Closing, at which time all monies shall be paid over to Seller. The deposit monies shall not be paid over to Seller prior to the Closing, unless otherwise agreed in writing by both Buyer and Seller. If Buyer and Seller cannot agree on the disbursement of these escrow monies, the Escrowee may place the deposit monies in Court requesting the Court to resolve the dispute.

**(D) IF PERFORMANCE BY BUYER IS CONTINGENT UPON OBTAINING A MORTGAGE:**
If payment of the purchase price requires a mortgage loan other than by Seller or other than assumption of Seller's mortgage, Buyer shall apply for the loan through any lending institution of Buyer's choice in writing on lender's standard form within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to the terms of this Contract, and use best efforts to obtain it. Buyer shall supply all necessary information and fees required by the proposed lender and shall authorize the lender to communicate with the real estate brokers(s) and involved attorney(s). Buyer shall obtain a written commitment from the lending institution to make a loan on the property under the following terms:

Principal Amount $ _____ Type of Mortgage:☐ VA ☐ FHA ☐ Conventional ☐ Other _____
Term of Mortgage: _____ years, with monthly payments based on a _____ year payment schedule.

The written mortgage commitment must be delivered to Seller's agent, who is the Listing Broker identified in Section 30, and Seller's attorney, if applicable, no later than _____ (date)(if left blank, then within thirty (30) calendar days after the attorney-review period is completed, or if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within thirty (30) calendar days after the parties agree to the terms of this Contract). Thereafter, if Buyer has not obtained the commitment, then either Buyer or Seller may void this Contract by written notice to the other party and Broker(s) within ten (10) calendar days of the commitment date or any extension of the commitment date, whichever is later. If this Contract is voided, the deposit monies paid by Buyer shall be returned to Buyer notwithstanding any other provision in this Contract, provided, however, if Seller alleges in writing to Escrowee within said ten (10) calendar days of the commitment date or any extension of the commitment date, whichever is later, that the failure to obtain the mortgage commitment is the result of Buyer's bad faith, negligence, intentional conduct or failure to diligently pursue the mortgage application, then Escrowee shall not return the deposit monies to Buyer without the written authorization of Seller.

**(E) BALANCE OF PURCHASE PRICE:** The balance of the purchase price shall be paid by Buyer in cash, or by certified, cashier's check or trust account check.

Payment of the balance of the purchase price by Buyer shall be made at the closing, which will take place on _____**August 13, 2018**_____ _____ (date) at the office of Buyer's closing agent or such other place as Seller and Buyer may agree ("the Closing").

**4. SUFFICIENT ASSETS:**
Buyer represents that Buyer has or will have as of the Closing, all necessary cash assets, together with the mortgage loan proceeds, to complete the Closing. Should Buyer not have sufficient cash assets at the Closing, Buyer will be in breach of this Contract and Seller shall be entitled to any remedies as provided by law.

**5. ACCURATE DISCLOSURE OF SELLING PRICE:**
Buyer and Seller certify that this Contract accurately reflects the gross sale price as indicated in Section 2 of this Contract. Buyer and Seller understand and agree that this information shall be disclosed to the Internal Revenue Service and other governmental agencies as required by law.

**6. ITEMS INCLUDED IN SALE:**
The Property includes all fixtures permanently attached to the building(s), and all shrubbery, plantings and fencing, gas and electric fixtures, cooking ranges and ovens, hot water heaters, flooring, screens, storm sashes, shades, blinds, awnings, radiator covers, heating apparatus and sump pumps, if any, except where owned by tenants, are included in this sale. All of the appliances shall be in working

Buyer's Initials: _____    Seller's Initials: _____

44 Echo Ridge Rd

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

111  order as of the Closing. Seller does not guarantee the condition of the appliances after the Deed and affidavit of title have been delivered
112  to Buyer at the Closing. The following items are also specifically included (If reference is made to the MLS Sheet and/or any other
113  document, then the document(s) referenced should be attached.):
114
115
116
117
118  **7.  ITEMS EXCLUDED FROM SALE: (If reference is made to the MLS Sheet and/or any other document, then the document(s)**
119  **referenced should be attached.):**
120
121
122
123
124  **8.  DATES AND TIMES FOR PERFORMANCE:**
125  Seller and Buyer agree that all dates and times included in this Contract are of the essence. This means that Seller and Buyer must satisfy
126  the terms of this Contract within the time limits that are set in this Contract or will be in default, except as otherwise provided in this
127  Contract or required by applicable law, including but not limited to if the Closing has to be delayed either because a lender does not timely
128  provide documents through no fault of Buyer or Seller or for three (3) business days because of the change of terms as required by the
129  Consumer Financial Protection Bureau.
130
131  **(A) Additional documents from lenders or other property owners:**
132  If a lender or other property owner requires that any addendum or other document be signed for a property it owns in connection with this
133  Contract, "final execution date," "acknowledgement date," or similar language that sets the time period for the completion of any conditions
134  or contingencies, including but not limited to inspections and financing, shall mean that the time will begin to run after the attorney-review
135  period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this
136  Contract, then from the date the parties agree to the terms of this Contract.
137
138  **9.  CERTIFICATE OF OCCUPANCY AND ZONING COMPLIANCE:**
139  Seller makes no representations concerning existing zoning ordinances, except that Seller's use of the Property is not presently in violation
140  of any zoning ordinances.
141
142  Some municipalities may require a Certificate of Occupancy or Housing Code Letter to be issued. If any is required for this Property,
143  Seller shall obtain it at Seller's expense and provide to Buyer prior to Closing and shall be responsible to make and pay for any repairs
144  required in order to obtain the Certificate or Letter. However, if this expense exceeds $ _____ (if left blank, then 1.5% of the
145  purchase price) to Seller, then Seller may terminate this Contract and refund to Buyer all deposit monies plus Buyer's reasonable expenses,
146  if any, in connection with this transaction unless Buyer elects to make repairs in excess of said amount at Buyer's expense, in which event
147  Seller shall not have the right to terminate this Contract. In addition, Seller shall comply with all New Jersey laws, and local ordinances,
148  including but not limited to smoke detectors, carbon monoxide detectors, fire extinguishers and indoor sprinklers, the cost of which shall
149  be paid by Seller and not be considered as a repair cost.
150
151  **10.  MUNICIPAL ASSESSMENTS:** (Seller represents that Seller ☐ has ☐ has not been notified of any such municipal assessments as
152  explained in this Section.)
153
154  Title shall be free and clear of all assessments for municipal improvements, including but not limited to municipal liens, as well as
155  assessments and liabilities for future assessments for improvements constructed and completed. All confirmed assessments and all
156  unconfirmed assessments that have been or may be imposed by the municipality for improvements that have been completed as of the
157  Closing are to be paid in full by Seller or credited to Buyer at the Closing. A confirmed assessment is a lien against the Property. An
158  unconfirmed assessment is a potential lien that, when approved by the appropriate governmental entity, will become a legal claim against
159  the Property.
160
161  **11.  QUALITY AND INSURABILITY OF TITLE:**
162  At the Closing, Seller shall deliver a duly executed Bargain and Sale Deed with Covenant as to Grantor's Acts or other Deed satisfactory
163  to Buyer. Title to the Property will be free from all claims or rights of others, except as described in this Section and Section 12, of this
164  Contract. The Deed shall contain the full legal description of the Property.
165
166  This sale will be subject to utility and other easements and restrictions of record, if any, and such state of facts as an accurate survey
167  might disclose, provided such easement or restriction does not unreasonably limit the use of the Property. Generally, an easement is a
168  right of a person other than the owner of property to use a portion of the property for a special purpose. A restriction is a recorded
169  limitation on the manner in which a property owner may use the property. Buyer does not have to complete the purchase, however,
170  if any easement, restriction or facts disclosed by an accurate survey would substantially interfere with the use of the Property for
171  residential purposes. A violation of any restriction shall not be a reason for Buyer refusing to complete the Closing as long as the title
172  company insures Buyer against loss at regular rates. The sale also will be made subject to applicable zoning ordinances, provided that
173  the ordinances do not render title unmarketable.
174

New Jersey Realtors® Form 118-Statewide 1/18  Page 4 of 13

Buyer's
Initials: _____

Seller's
Initials: _____
44 Echo Ridge Rd

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

175  Title to the Property shall be good, marketable and insurable, at regular rates, by any title insurance company licensed to do business
176  in New Jersey, subject only to the claims and rights described in this section and Section 12. Buyer agrees to order a title insurance
177  commitment (title search) and survey, if required by Buyer's lender, title company or the municipality where the Property is located,
178  and to furnish copies to Seller. If Seller's title contains any exceptions other than as set forth in this section, Buyer shall notify Seller
179  and Seller shall have thirty (30) calendar days within which to eliminate those exceptions. Seller represents, to the best of Seller's
180  knowledge, that there are no restrictions in any conveyance or plans of record that will prohibit use and/or occupancy of the Property
181  as a _____ **one** _____ family residential dwelling. Seller represents that all buildings and other improvements on the Property are
182  within its boundary lines and that no improvements on adjoining properties extend across boundary lines of the Property.

183
184  If Seller is unable to transfer the quality of title required and Buyer and Seller are unable to agree upon a reduction of the purchase
185  price, Buyer shall have the option to either void this Contract, in which case the monies paid by Buyer toward the purchase price shall
186  be returned to Buyer, together with the actual costs of the title search and the survey and the mortgage application fees in preparing for
187  the Closing without further liability to Seller, or to proceed with the Closing without any reduction of the purchase price.

188
189  **12. POSSESSION, OCCUPANCY AND TENANCIES:**
190  **(A) Possession and Occupancy.**
191  Possession and occupancy will be given to Buyer at the Closing. Buyer shall be entitled to possession of the Property, and any rents or
192  profits from the Property, immediately upon the delivery of the Deed and the Closing. Seller shall pay off any person with a claim or right
193  affecting the Property from the proceeds of this sale at or before the Closing.

194
195  **(B) Tenancies.** ☐ Applicable ☒ Not Applicable
196  Occupancy will be subject to the tenancies listed below as of Closing. Seller represents that the tenancies are not in violation of any
197  existing Municipal, County, State or Federal rules, regulations or laws. Seller agrees to transfer all security deposits to Buyer at the Closing
198  and to provide to Brokers and Buyer a copy of all leases concerning the tenancies, if any, along with this Contract when it is signed by
199  Seller. Seller represents that such leases can be assigned and that Seller will assign said leases, and Buyer agrees to accept title subject to
200  these leases.

201
202  **TENANT'S NAME**          **LOCATION**                    **RENT**      **SECURITY DEPOSIT**      **TERM**
203
204  _____
205  _____
206  _____

207
208  **13. LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARD: (This section is applicable only to all dwellings**
209  **built prior to 1978.)** ☐ Applicable ☐ Not Applicable
210  **(A) Document Acknowledgement.**
211  Buyer acknowledges receipt of the EPA pamphlet entitled "Protect Your Family From Lead In Your Home." Moreover, a copy of a
212  document entitled "Disclosure of Information and Acknowledgement Lead-Based Paint and Lead-Based Paint Hazards" has been fully
213  completed and signed by Buyer, Seller and Broker(s) and is appended to" and made a part of this Contract.

214
215  **(B) Lead Warning Statement.**
216  Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such
217  property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead
218  poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient,
219  behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest
220  in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or
221  inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for
222  possible lead-based paint hazards is recommended prior to purchase.

223
224  **(C) Inspection.**
225  The law requires that, unless Buyer and Seller agree to a longer or shorter period, Seller must allow Buyer a ten (10) day period
226  within which to complete an inspection and/or risk assessment of the Property as set forth in the next paragraph. Buyer, however, has the
227  right to waive this requirement in its entirety.

228
229  This Contract is contingent upon an inspection and/or risk assessment (the "Inspection") of the Property by a certified inspector/risk
230  assessor for the presence of lead-based paint and/or lead-based paint hazards. The Inspection shall be ordered and obtained by Buyer at
231  Buyer's expense within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an
232  attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) days after the parties agree to
233  the terms in this Contract ("Completion Date"). If the Inspection indicates that no lead-based paint or lead-based paint hazard is present
234  at the Property, this contingency clause shall be deemed null and void. If the Inspection indicates that lead-based paint or lead-based paint
235  hazard is present at the Property, this contingency clause will terminate at the time set forth above unless, within five (5) business days from
236  the Completion Date, Buyer delivers a copy of the inspection and/or risk assessment report to Seller and Brokers and (1) advises Seller
237  and Brokers, in writing that Buyer is voiding this Contract; or (2) delivers to Seller and Brokers a written amendment (the "Amendment")

New Jersey Realtors® Form 118-Statewide 1/18 Page 5 of 13

Buyer's
Initials: _Deb Gk_

Seller's
Initials: _[signature]_
44 Echo Ridge Rd

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

238    to this Contract listing the specific existing deficiencies and corrections required by Buyer. The Amendment shall provide that Seller
239    agrees to (a) correct the deficiencies; and (b) furnish Buyer with a certification from a certified inspector/risk assessor that the deficiencies
240    have been corrected, before the Closing. Seller shall have _____ (if left blank, then 3) business days after receipt of the Amendment
241    to sign and return it to Buyer or send a written counter-proposal to Buyer. If Seller does not sign and return the Amendment or fails to
242    offer a counter-proposal, this Contract shall be null and void. If Seller offers a counter-proposal, Buyer shall have _____ (if left
243    blank, then 3) business days after receipt of the counter-proposal to accept it. If Buyer fails to accept the counter-proposal within the time
244    limit provided, this Contract shall be null and void.

245

246 **14.  POINT-OF-ENTRY TREATMENT ("POET") SYSTEMS:** ☐ Applicable ☐ Not Applicable
247 A point-of-entry treatment ("POET") system is a type of water treatment system used to remove contaminants from the water entering a
248 structure from a potable well, usually through a filtration process. Seller represents that a POET system has been installed to an existing
249 well on the Property and the POET system was installed and/or maintained using funds received from the New Jersey Spill Compensation
250 Fund Claims Program, N.J.S.A. 58:10-23.11, et seq. The Buyer understands that Buyer will not be eligible to receive any such funds for the
251 continued maintenance of the POET system. Pursuant to N.J.A.C. 7:1J-2.5(c), Seller agrees to notify the Department of Environmental
252 Protection within thirty (30) calendar days of executing this Contract that the Property is to be sold.

253

254 **15.  CESSPOOL REQUIREMENTS:** ☐ Applicable ☐ Not Applicable
255 **(This section is applicable if the Property has a cesspool, except in certain limited circumstances set forth in N.J.A.C.**
256 **7:9A-3.16.)** Pursuant to New Jersey's Standards for Individual Subsurface Sewage Disposal Systems, N.J.A.C. 7:9A (the "Standards"), if
257 this Contract is for the sale of real property at which any cesspool, privy, outhouse, latrine or pit toilet (collectively "Cesspool") is located,
258 the Cesspool must be abandoned and replaced with an individual subsurface sewage disposal system at or before the time of the real
259 property transfer, except in limited circumstances.

260

261 **(A)** Seller represents to Buyer that ☐ no Cesspool is located at or on the Property, or ☐ one or more Cesspools are located at or on the
262 Property. **[If there are one or more Cesspools, then also check EITHER Box 1 or 2 below.]**

263

264 1.  ☐ Seller agrees that, prior to the Closing and at its sole cost and expense, Seller shall abandon and replace any and all Cesspools
265 located at or on the Property and replace such Cesspools with an individual subsurface sewage disposal system ("System") meeting all
266 the requirements of the Standards. At or prior to the Closing, Seller shall deliver to Buyer a certificate of compliance ("Certificate of
267 Compliance") issued by the administrative authority ("Administrative Authority") (as those terms are defined in N.J.A.C. 7:9A-2.1) with
268 respect to the System. Notwithstanding the foregoing, if the Administrative Authority determines that a fully compliant system cannot
269 be installed at the Property, then Seller shall notify Buyer in writing within three (3) business days of its receipt of the Administrative
270 Authority's determination of its intent to install either a nonconforming System or a permanent holding tank, as determined by the
271 Administrative Authority ( "Alternate System"), and Buyer shall then have the right to void this Contract by notifying Seller in writing
272 within seven (7) business days of receipt of the notice from Seller. If Buyer fails to timely void this Contract, Buyer shall have waived its
273 right to cancel this Contract under this paragraph, and Seller shall install the Alternate System and, at or prior to the Closing, deliver
274 to Buyer such Certificate of Compliance or other evidence of approval of the Alternate System as may be issued by the Administrative
275 Authority. The delivery of said Certificate of Compliance or other evidence of approval shall be a condition precedent to the Closing; or

276

277 2.  ☐ Buyer agrees that, at its sole cost and expense, Buyer shall take all actions necessary to abandon and replace any and all Cesspools
278 located at or on the Property and replace such Cesspools with a System meeting all the requirements of the Standards or an Alternate
279 System. Buyer shall indemnify and hold Seller harmless for any and all costs, damages, claims, fines, penalties and assessments (including
280 but not limited to reasonable attorneys' and experts' fees) arising from Buyer's violation of this paragraph. This paragraph shall survive
281 the Closing.

282

283 **(B)** If prior to the Closing, either Buyer or Seller becomes aware of any Cesspool at or on the Property that was not disclosed by Seller
284 at or prior to execution of this Contract, the party with knowledge of the newly identified Cesspool shall promptly, but in no event later
285 than three (3) business days after receipt of such knowledge, advise the other party of the newly identified Cesspool in writing. In such
286 event, the parties in good faith shall agree, no later than seven (7) business days after sending or receiving the written notice of the newly
287 identified Cesspool, or the day preceding the scheduled Closing, whichever is sooner, to proceed pursuant to subsection (A) 1 or 2 above
288 or such other agreement as satisfies the Standards, or either party may terminate this Contract.

289

290 **16.  INSPECTION CONTINGENCY CLAUSE:**
291 **(A) Responsibilities of Home Ownership.**
292 Buyer and Seller acknowledge and agree that, because the purchase of a home is one of the most significant investments a person can
293 make in a lifetime, all aspects of this transaction require considerable analysis and investigation by Buyer before closing title to the
294 Property. While Brokers and salespersons who are involved in this transaction are trained as licensees under the New Jersey Licensing Act
295 they readily acknowledge that they have had no special training or experience with respect to the complexities pertaining to the multitude
296 of structural, topographical and environmental components of this Property. For example, and not by way of limitation, Brokers and
297 salespersons have no special training, knowledge or experience with regard to discovering and/or evaluating physical defects, including

Buyer's
Initials: _____

Seller's
Initials: _____

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

298  structural defects, roof, basement, mechanical equipment, such as heating, air conditioning, and electrical systems, sewage, plumbing,
299  exterior drainage, termite, and other types of insect infestation or damage caused by such infestation. Moreover, Brokers and salespersons
300  similarly have no special training, knowledge or experience with regard to evaluation of possible environmental conditions which might
301  affect the Property pertaining to the dwelling, such as the existence of radon gas, formaldehyde gas, airborne asbestos fibers, toxic
302  chemicals, underground storage tanks, lead, mold or other pollutants in the soil, air or water.
303
304  **(B)  Radon Testing, Reports and Mitigation.**
305  **(Radon is a radioactive gas which results from the natural breakdown of uranium in soil, rock and water. It has been**
306  **found in homes all over the United States and is a carcinogen. For more information on radon, go to www.epa.gov/**
307  **radon/pubs/citguide.html and www.nj.gov/dep/rpp/radon or call the NJ Radon Hot Line at 800-648-0394 or 609-984- 5425.)**
308
309  If the Property has been tested for radon prior to the date of this Contract, Seller agrees to provide to Buyer, at the time of the execution
310  of this Contract, a copy of the result of the radon test(s) and evidence of any subsequent radon mitigation or treatment of the Property.
311  In any event, Buyer shall have the right to conduct a radon inspection/test as provided and subject to the conditions set forth in paragraph
312  (D) below. If any test results furnished or obtained by Buyer indicate a concentration level of 4 picocuries per liter (4.0 pCi/L) or more in
313  the subject dwelling, Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) business days of the
314  receipt of any such report. For the purposes of this Section 16, Seller and Buyer agree that, in the event a radon gas concentration level
315  in the subject dwelling is determined to be less than 4 picocuries per liter (4.0 pCi/L) without any remediation, such level of radon gas
316  concentration shall be deemed to be an acceptable level ("Acceptable Level") for the purposes of this Contract. Under those circumstances,
317  Seller shall be under no obligation to remediate, and this contingency clause as it relates to radon shall be deemed fully satisfied.
318
319  If Buyer's qualified inspector reports that the radon gas concentration level in the subject dwelling is four picocuries per liter (4.0 pCi/L)
320  or more, Seller shall have a seven (7) business day period after receipt of such report to notify Buyer in writing that Seller agrees to
321  remediate the gas concentration to an Acceptable Level (unless Buyer has voided this Contract as provided in the preceding paragraph).
322  Upon such remediation, the contingency in this Contract which relates to radon shall be deemed fully satisfied. If Seller fails to notify
323  Buyer of Seller's agreement to so remediate, such failure to so notify shall be deemed to be a refusal by Seller to remediate the radon level
324  to an Acceptable Level, and Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) calendar
325  days thereafter. If Buyer fails to void this Contract within the seven (7) day period, Buyer shall have waived Buyer's right to cancel
326  this Contract and this Contract shall remain in full force and effect, and Seller shall be under no obligation to remediate the radon gas
327  concentration. If Seller agrees to remediate the radon to an Acceptable Level, such remediation and associated testing shall be completed
328  by Seller prior to the Closing.
329
330  **(C)  Infestation and/or Damage By Wood Boring Insects.**
331  Buyer, shall have the right to have the Property inspected by a licensed exterminating company of Buyer's choice, for the purpose of
332  determining if the Property is free from infestation and damage from termites or other wood destroying insects. If Buyer chooses to make
333  this inspection, Buyer shall pay for the inspection unless Buyer's lender prohibits Buyer from paying, in which case Seller shall pay. The
334  inspection must be completed and written reports must be furnished to Seller and Broker(s) within _____ (if left blank, then 14) calendar
335  days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-
336  Review Clause Section of this Contract, then within _____ (if left blank, then 14) calendar days after the parties agree to the terms of this
337  Contract. This report shall state the nature and extent of any infestation and/or damage and the full cost of treatment for any infestation.
338  Seller agrees to treat any infestation and cure any damage at Seller's expense prior to Closing, provided however, if the cost to cure exceeds
339  1% of the purchase price of the Property, then either party may void this Contract provided they do so within _____ (if left blank, then 7)
340  business days after the report has been delivered to Seller and Brokers. If Buyer and Seller are unable to agree upon who will pay for the
341  cost to cure and neither party timely voids this Contract, then Buyer will be deemed to have waived its right to terminate this Contract
342  and will bear the cost to cure that is over 1% of the purchase price, with Seller bearing the cost that is under 1% of the purchase price.
343
344  **(D)  Buyer's Right to Inspections.**
345  Buyer acknowledges that the Property is being sold in an "as is" condition and that this Contract is entered into based upon the knowledge
346  of Buyer as to the value of the land and whatever buildings are upon the Property, and not on any representation made by Seller, Brokers
347  or their agents as to character or quality of the Property. Therefore, Buyer, at Buyer's sole cost and expense, is granted the right to have
348  the dwelling and all other aspects of the Property, inspected and evaluated by "qualified inspectors" (as the term is defined in subsection
349  G below) for the purpose of determining the existence of any physical defects or environmental conditions such as outlined above. If
350  Buyer chooses to make inspections referred to in this paragraph, such inspections must be completed, and written reports including a list
351  of repairs Buyer is requesting must be furnished to Seller and Brokers within _____ (if left blank, then 14) calendar days after the attorney-
352  review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section
353  of this Contract, then within _____ (if left blank, then 14) calendar days after the parties agree to the terms of this Contract. If Buyer fails
354  to furnish such written reports to Seller and Brokers within the _____ (if left blank, then 14) calendar days specified in this paragraph,
355  this contingency clause shall be deemed waived by Buyer, and the Property shall be deemed acceptable by Buyer. The time period for
356  furnishing the inspection reports is referred to as the "Inspection Time Period." Seller shall have all utilities in service for inspections.
357

New Jersey Realtors® Form 118-Statewide 1/18 Page 7 of 13

Buyer's
Initials _____

Seller's
Initials _____

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

**(E) Responsibility to Cure.**

If any physical defects or environmental conditions (other than radon or woodboring insects) are reported by the qualified inspectors to Seller within the Inspection Time Period, Seller shall then have seven (7) business days after the receipt of such reports to notify Buyer in writing that Seller shall correct or cure any of the defects set forth in such reports. If Seller fails to notify Buyer of Seller's agreement to so cure and correct, such failure to so notify shall be deemed to be a refusal by Seller to cure or correct such defects. If Seller fails to agree to cure or correct such defects within the seven (7) business day period, or if the environmental condition at the Property (other than radon) is incurable and is of such significance as to unreasonably endanger the health of Buyer, Buyer shall then have the right to void this Contract by notifying Seller in writing within seven (7) business days thereafter. If Buyer fails to void this Contract within the seven (7) business day period, Buyer shall have waived Buyer's right to cancel this Contract and this Contract shall remain in full force, and Seller shall be under no obligation to correct or cure any of the defects set forth in the inspections. If Seller agrees to correct or cure such defects, all such repair work shall be completed by Seller prior to the closing of title. Radon at the Property shall be governed by the provisions of Paragraph (B), above.

**(F) Flood Hazard Area (if applicable).**

The federal and state governments have designated certain areas as flood areas. If the Property is located in a flood area, the use of the Property may be limited. If Buyer's inquiry reveals that the Property is in a flood area, Buyer may cancel this Contract within ten (10) calendar days after the attorney-review period is completed or, if this Contract is timely disapproved by an attorney as provided in the Attorney-Review Clause Section of this Contract, then within ten (10) calendar days after the parties agree to the terms of this Contract. If the mortgage lender requires flood insurance, then Buyer shall be responsible for obtaining such insurance on the Property. For a flood policy to be in effect immediately, there must be a loan closing. There is a (30) calendar day wait for flood policies to be in effect for cash transactions. Therefore, cash buyers are advised to make application and make advance payment for a flood policy at least thirty (30) calendar days in advance of closing if they want coverage to be in effect upon transfer of title.

Buyer's mortgage lender may require Buyer to purchase flood insurance in connection with Buyer's purchase of this Property. The National Flood Insurance Program ("NFIP") provides for the availability of flood insurance but also establishes flood insurance policy premiums based on the risk of flooding in the area where properties are located. Due to amendments to federal law governing the NFIP, those premiums are increasing and, in some cases, will rise by a substantial amount over the premiums previously charged for flood insurance for the Property. As a result, Buyer should not rely on the premiums paid for flood insurance on this Property previously as an indication of the premiums that will apply after Buyer completes the purchase. In considering Buyer's purchase of this Property, Buyer is therefore urged to consult with one or more carriers of flood insurance for a better understanding of flood insurance coverage, the premiums that are likely to be required to purchase such insurance and any available information about how those premiums may increase in the future.

**(G) Qualifications of Inspectors.**

Where the term "qualified inspectors" is used in this Contract, it is intended to refer to persons or businesses that are licensed or certified by the State of New Jersey for such purpose.

**17. MEGAN'S LAW STATEMENT:**

Under New Jersey law, the county prosecutor determines whether and how to provide notice of the presence of convicted sex offenders in an area. In their professional capacity, real estate licensees are not entitled to notification by the county prosecutor under Megan's Law and are unable to obtain such information for you. Upon closing, the county prosecutor may be contacted for such further information as may be disclosable to you.

**18. MEGAN'S LAW REGISTRY:**

Buyer is notified that New Jersey law establishes an Internet Registry of Sex Offenders that may be accessed at www.njsp.org. Neither Seller or any real estate broker or salesperson make any representation as to the accuracy of the registry.

**19. NOTIFICATION REGARDING OFF-SITE CONDITIONS: (Applicable to all resale transactions.)**

Pursuant to the New Residential Construction Off-Site Conditions Disclosure Act, N.J.S.A. 46:3C-1, et. seq, the clerks of municipalities in New Jersey maintains lists of off-site conditions which may affect the value of residential properties in the vicinity of the off-site condition. Buyers may examine the lists and are encouraged to independently investigate the area surrounding this property in order to become familiar with any off-site conditions which may affect the value of the property. In cases where a property is located near the border of a municipality, buyers may wish to also examine the list maintained by the neighboring municipality.

**20. AIR SAFETY AND ZONING NOTICE:**

Any person who sells or transfers a property that is in an airport safety zone as set forth in the New Jersey Air Safety and Zoning Act of 1983, N.J.S.A. 6:1-80, et seq., and appearing on a municipal map used for tax purposes as well as Seller's agent, shall provide notice to a prospective buyer that the property is located in an airport safety zone prior to the signing of the contract of sale. The Air Safety and Zoning Act also requires that each municipality in an airport safety zone enact an ordinance or ordinances incorporating the standards promulgated under the Act and providing for their enforcement within the delineated areas in the municipality. Buyer acknowledges

Buyer's
Initials: _Deb Gh_

Seller's
Initials: _X_

44 Echo Ridge Rd

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

418 receipt of the following list of airports and the municipalities that may be affected by them and that Buyer has the responsibility to
419 contact the municipal clerk of any affected municipality concerning any ordinance that may affect the Property.

420

| Municipality | Airport(s) | Municipality | Airport(s) |
|---|---|---|---|
| Alexandria Tp. | Alexandria & Sky Manor | Manalapan Tp. (Monmouth Cty.) | Old Bridge |
| Andover Tp. | Aeroflex-Andover & Newton | Mansfield Tp. | Hackettstown |
| Bedminister Tp. | Somerset | Manville Bor. | Central Jersey Regional |
| Berkeley Tp. | Ocean County | Medford Tp. | Flying W |
| Berlin Bor. | Camden County | Middle Tp. | Cape May County |
| Blairstown Tp. | Blairstown | Millville | Millville Municipal |
| Branchburg Tp. | Somerset | Monroe Tp. (Gloucester Cty.) | Cross Keys & Southern Cross |
| Buena Bor. (Atlantic Cty.) | Vineland-Downtown | Monroe Tp. (Middlesex Cty.) | Old Bridge |
| Dennis Tp. | Woodbine Municipal | Montgomery Tp. | Princeton |
| Eagleswood Tp. | Eagles Nest | Ocean City | Ocean City |
| Ewing Tp. | Trenton-Mercer County | Old Bridge Tp. | Old Bridge |
| E. Hanover Tp. | Morristown Municipal | Oldsman Tp. | Oldmans |
| Florham Park Bor. | Morristown Municipal | Pemberton Tp. | Pemberton |
| Franklin Tp. (Gloucester Cty.) | Southern Cross & Vineland Downtown | Pequannock Tp. | Lincoln Park |
| Franklin Tp. (Hunterdon Cty.) | Sky Manor | Readington Tp. | Solberg-Hunterdon |
| Franklin Tp. (Somerset Cty.) | Central Jersey Regional | Rocky Hill Boro. | Princeton |
| Green Tp. | Trinca | Southampton Tp. | Red Lion |
| Hammonton Bor. | Hammonton Municipal | Springfield Tp. | Red Wing |
| Hanover Tp. | Morristown Municipal | Upper Deerfield Tp. | Bucks |
| Hillsborough Tp. | Central Jersey Regional | Vineland City | Kroelinger & Vineland Downtown |
| Hopewell Tp. (Mercer Cty.) | Trenton-Mercer County | Wall Tp. | Monmouth Executive |
| Howell Tp. | Monmouth Executive | Wantage Tp. | Sussex |
| Lacey Tp. | Ocean County | Robbinsville | Trenton-Robbinsville |
| Lakewood Tp. | Lakewood | West Milford Tp. | Greenwood Lake |
| Lincoln Park Bor. | Lincoln Park | Winslow Tp. | Camden County |
| Lower Tp. | Cape May County | Woodbine Bor. | Woodbine Municipal |
| Lumberton Tp. | Flying W & South Jersey Regional | | |

449

450 The following airports are not subject to the Airport Safety and Zoning Act because they are subject to federal regulation or within the
451 jurisdiction of the Port of Authority of New York and New Jersey and therefore are not regulated by New Jersey: Essex County Airport,
452 Linden Airport, Newark Liberty Airport, Teterboro Airport, Little Ferry Seaplane Base, Atlantic City International Airport, and
453 Maguire Airforce Base and NAEC Lakehurst.

454

**21. BULK SALES:**
456 The New Jersey Bulk Sales Law, N.J.S.A. 54:50-38, (the "Law") applies to the sale of certain residential property. Under the Law,
457 Buyer may be liable for taxes owed by Seller if the Law applies and Buyer does not deliver to the Director of the New Jersey Division
458 of Taxation (the "Division") a copy of this Contract and a notice on a form required by the Division (the "Tax Form") at least ten
459 (10) business days prior to the Closing. If Buyer decides to deliver the Tax Form to the Division, Seller shall cooperate with Buyer by
460 promptly providing Buyer with any information that Buyer needs to complete and deliver the Tax Form in a timely manner. Buyer
461 promptly shall deliver to Seller a copy of any notice that Buyer receives from the Division in response to the Tax Form.

462

463 The Law does not apply to the sale of a simple dwelling house, or the sale or lease of a seasonal rental property, if Seller is an
464 individual, estate or trust, or any combination thereof, owning the simple dwelling house or seasonal rental property as joint tenants, tenants in
465 common or tenancy by the entirety. A simple dwelling house is a one or two family residential building, or a cooperative or condominium unit
466 used as a residential dwelling, none of which has any commercial property. A seasonal rental property is a time share, or a dwelling unit
467 that is rented for residential purposes for a term of not more than 125 consecutive days, by an owner that has a permanent residence
468 elsewhere.

469

470 If, prior to the Closing, the Division notifies Buyer to withhold an amount (the "Tax Amount") from the purchase price proceeds for
471 possible unpaid tax liabilities of Seller, Buyer's attorney or Buyer's title insurance company (the "Escrow Agent") shall withhold the Tax
472 Amount from the closing proceeds and place that amount in escrow (the "Tax Escrow"). If the Tax Amount exceeds the amount of
473 available closing proceeds, Seller shall bring the deficiency to the Closing and the deficiency shall be added to the Tax Escrow. If the
474 Division directs the Escrow Agent or Buyer to remit funds from the Tax Escrow to the Division or some other entity, the Escrow Agent
475 or Buyer shall do so. The Escrow Agent or Buyer shall only release the Tax Escrow, or the remaining balance thereof, to Seller (or as
476 otherwise directed by the Division) upon receipt of written notice from the Division that it can be released, and that no liability will be
477 asserted under the Law against Buyer.

478

New Jersey Realtors® Form 118-Statewide 1/18  Page 9 of 13

Buyer's
Initials: _Dc & Ca_

Seller's
Initials: _[signature]_
44 Echo Ridge Rd

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

**22.  NOTICE TO BUYER CONCERNING INSURANCE:**
Buyer should obtain appropriate casualty and liability insurance for the Property. Buyer's mortgage lender will require that such insurance be in place at Closing. Occasionally, there are issues and delays in obtaining insurance. Be advised that a "binder" is only a temporary commitment to provide insurance coverage and is not an insurance policy. Buyer is therefore urged to contact a licensed insurance agent or broker to assist Buyer in satisfying Buyer's insurance requirements.

**23.  MAINTENANCE AND CONDITION OF PROPERTY:**
Seller agrees to maintain the grounds, buildings and improvements, in good condition, subject to ordinary wear and tear. The premises shall be in "broom clean" condition and free of debris as of the Closing. Seller represents that all electrical, plumbing, heating and air conditioning systems (if applicable), together with all fixtures included within the terms of the Contract now work and shall be in proper working order at the Closing. Seller further states, that to the best of Seller's knowledge, there are currently no leaks or seepage in the roof, walls or basement. Seller does not guarantee the continuing condition of the premises as set forth in this Section after the Closing.

**24.  RISK OF LOSS:**
The risk of loss or damage to the Property by fire or otherwise, except ordinary wear and tear, is the responsibility of Seller until the Closing.

**25.  INITIAL AND FINAL WALK-THROUGHS:**
In addition to the inspections set forth elsewhere in this Contract, Seller agrees to permit Buyer or Buyer's duly authorized representative to conduct an initial and a final walk-through inspection of the interior and exterior of the Property at any reasonable time before the Closing. Seller shall have all utilities in service for the inspections.

**26.  ADJUSTMENTS AT CLOSING:**
Seller shall pay for the preparation of the Deed, realty transfer fee, lien discharge fees, if any, and one-half of the title company charges for disbursements and attendance allowed by the Commissioner of Insurance; but all searches, title insurance premium and other conveyancing expenses are to be paid for by Buyer.

Seller and Buyer shall make prorated adjustments at Closing for items which have been paid by Seller or are due from Seller, such as real estate taxes, water and sewer charges that could be claims against the Property, rental and security deposits, association and condominium dues, and fuel in Seller's tank. Adjustments of fuel shall be based upon physical inventory and pricing by Seller's supplier. Such determination shall be conclusive.

If Buyer is assuming Seller's mortgage loan, Buyer shall credit Seller for all monies, such as real estate taxes and insurance premiums paid in advance or on deposit with Seller's mortgage lender. Buyer shall receive a credit for monies, which Seller owes to Seller's Mortgage lender, such as current interest or a deficit in the mortgage escrow account.

If the Property is used or enjoyed by not more than four families and the purchase price exceeds $1,000,000, then pursuant to N.J.S.A. 46:15-7.2, Buyer will be solely responsible for payment of the fee due for the transfer of the Property, which is the so-called "Mansion Tax, in the amount of one (1%) percent of the purchase price.

Unless an exemption applies, non-resident individuals, estates, or trusts that sell or transfer real property in New Jersey are required to make an estimated gross income tax payment to the State of New Jersey on the gain from a transfer/sale of real property (the so-called "Exit Tax,") as a condition of the recording of the deed.

If Seller is a foreign person (an individual, corporation or entity that is a non-US resident) under the Foreign Investment in Real Property Tax Act of 1980, as amended ("FIRPTA"), then with a few exceptions, a portion of the proceeds of sale may need to be withheld from Seller and paid to the Internal Revenue Service as an advance payment against Seller's tax liability.

Seller agrees that, if applicable, Seller will (a) be solely responsible for payment of any state or federal income tax withholding amount(s) required by law to be paid by Seller (which Buyer may deduct from the purchase price and pay at the Closing); and (b) execute and deliver to Buyer at the Closing any and all forms, affidavits or certifications required under state and federal law to be filed in connection with the amount(s) withheld.

There shall be no adjustment on any Homestead Rebate due or to become due.

**27.  FAILURE OF BUYER OR SELLER TO CLOSE:**
If Seller fails to close title to the Property in accordance with this Contract, Buyer then may commence any legal or equitable action to which Buyer may be entitled. If Buyer fails to close title in accordance with this Contract, Seller then may commence an action for damages it has suffered, and, in such case, the deposit monies paid on account of the purchase price shall be applied against such damages. If Buyer or Seller breach this Contract, the breaching party will nevertheless be liable to Brokers for the commissions in the

Buyer's Initials: ___  Seller's Initials: ___

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

539  amount set forth in this Contract, as well as reasonable attorneys' fees, costs and such other damages as are determined by the Court.
540
541  **28. CONSUMER INFORMATION STATEMENT ACKNOWLEDGMENT:**
542  By signing below, Seller and Buyer acknowledge they received the Consumer Information Statement on New Jersey Real Estate
543  Relationships from the Brokers prior to the first showing of the Property.
544
545  **29. DECLARATION OF BROKER(S)'S BUSINESS RELATIONSHIP(S):**
546  **(A)**                          **Coldwell Banker**                          , (name of firm) and its authorized
547  representative (s) Joshua Baris
548
549                          **(name(s) of licensee(s))**
550
551  **ARE OPERATING IN THIS TRANSACTION AS A** (indicate one of the following)
552  ☐ **SELLER'S AGENT**       ☐ **BUYER'S AGENT**       ☒ **DISCLOSED DUAL AGENT**       ☐ **TRANSACTION BROKER.**
553
554  **(B)** (If more than one firm is participating, provide the following.) **INFORMATION SUPPLIED BY** _____
555  _____ **(name of other firm)** HAS INDICATED THAT IT IS
556  **OPERATING IN THIS TRANSACTION AS A** (indicate one of the following)
557  ☐ **SELLER'S AGENT**       ☐ **BUYER'S AGENT**       ☐ **TRANSACTION BROKER.**
558
559  **30. BROKERS' INFORMATION AND COMMISSION:**
560  The commission, in accord with the previously executed listing agreement, shall be due and payable at the Closing and payment by Buyer
561  of the purchase consideration for the Property. Seller hereby authorizes and instructs whomever is the disbursing agent to pay the full
562  commission as set forth below to the below-mentioned Brokerage Firm(s) out of the proceeds of sale prior to the payment of any such
563  funds to Seller. Buyer consents to the disbursing agent making said disbursements. The commission shall be paid upon the purchase price
564  set forth in Section 2 and shall include any amounts allocated to, among other things, furniture and fixtures.
565
566          **Coldwell Banker Res. Brokerage 0903652**
567  **Listing Firm**                                    REC License ID
568
569  **Joshua Baris**                                    **0229466**
570  **Listing Agent**                                   REC License ID
571
572  **375 Park Ave 21, Fort Lee, NJ  07024**
573  Address
574                                          **(201)741-4999**
575  Office Telephone            Fax                 Agent Cell Phone
576                          (Per Listing Agreement)
577  **josh@njlux.com**
578  E-mail                              **Commission due Listing Firm**
579  **Coldwell Banker Res. Brokerage 0903652**
580  **Participating Firm**                              REC License ID
581
582  **Joshua Baris**                                    **0229466**
583  **Participating Agent**                             REC License ID
584  **375 Park Ave 21, Fort Lee, NJ  07024**
585  Address
586                                          **(201)741-4999**
587  Office Telephone            Fax                 Agent Cell Phone
588
589  **josh@njlux.com**
590  E-mail                              **Commission due Participating Firm**
591
592  **31. EQUITABLE LIEN:**
593  Under New Jersey law, brokers who bring the parties together in a real estate transaction are entitled to an equitable lien in the amount
594  of their commission. This lien attaches to the property being sold from when the contract of sale is signed until the closing and then to
595  the funds due to seller at closing, and is not contingent upon the notice provided in this Section. As a result of this lien, the party who
596  disburses the funds at the Closing in this transaction should not release any portion of the commission to any party other than Broker(s)
597  and, if there is a dispute with regard to the commission to be paid, should hold the disputed amount in escrow until the dispute with
598  Broker(s) is resolved and written authorization to release the funds is provided by Broker(s).

Buyer's
Initials:  Deb Cm

Seller's
Initials:  [signature]
44 Echo Ridge Rd

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

**32. DISCLOSURE THAT BUYER OR SELLER IS A REAL ESTATE LICENSEE:** ☐ Applicable ☒ Not Applicable
A real estate licensee in New Jersey who has an interest as a buyer or seller of real property is required to disclose in the sales contract
that the person is a licensee. _____ therefore discloses that he/she is licensed in New Jersey as
a real estate ☐ broker ☐ broker-salesperson ☐ salesperson ☐ referral agent.

**33. BROKERS TO RECEIVE CLOSING DISCLOSURE AND OTHER DOCUMENTS:**
Buyer and Seller agree that Broker(s) involved in this transaction will be provided with the Closing Disclosure documents and any
amendments to those documents in the same time and manner as the Consumer Financial Protection Bureau requires that those
documents be provided to Buyer and Seller. In addition, Buyer and Seller agree that, if one or both of them hire an attorney who
disapproves this Contract as provided in the Attorney-Review Clause Section, then the attorney(s) will notify the Broker(s) in writing when
either this Contract is finalized or the parties decide not to proceed with the transaction.

**34. PROFESSIONAL REFERRALS:**
Seller and Buyer may request the names of attorneys, inspectors, engineers, tradespeople or other professionals from their Brokers
involved in the transaction. Any names provided by Broker(s) shall not be deemed to be a recommendation or testimony of competency of
the person or persons referred. Seller and Buyer shall assume full responsibility for their selection(s) and hold Brokers and/or salespersons
harmless for any claim or actions resulting from the work or duties performed by these professionals.

**35. ATTORNEY-REVIEW CLAUSE:**
**(1) Study by Attorney**
Buyer or Seller may choose to have an attorney study this Contract. If an attorney is consulted, the attorney must complete his or her
review of the Contract within a three-day period. This Contract will be legally binding at the end of this three-day period unless an
attorney for Buyer or Seller reviews and disapproves of the Contract.

**(2) Counting the Time**
You count the three days from the date of delivery of the signed Contract to Buyer and Seller. You do not count Saturdays, Sundays or
legal holidays. Buyer and Seller may agree in writing to extend the three-day period for attorney review.

**(3) Notice of Disapproval**
If an attorney for the Buyer or Seller reviews and disapproves of this Contract, the attorney must notify the Broker(s) and the other party
named in this Contract within the three-day period. Otherwise this Contract will be legally binding as written. The attorney must send
the notice of disapproval to the Broker(s) by fax, email, personal delivery, or overnight mail with proof of delivery. Notice by overnight mail will be
effective upon mailing. The personal delivery will be effective upon delivery to the Broker's office. The attorney may also, but need not, inform the
Broker(s) of any suggested revision(s) in the Contract that would make it satisfactory.

**36. NOTICES:**
All notices shall be by certified mail, fax, email, recognized overnight courier or electronic document (except for notices under the
Attorney-Review Clause Section) or by delivering it personally. The certified letter, e-mail, reputable overnight carrier, fax or electronic
document will be effective upon sending. Notices to Seller and Buyer shall be addressed to the addresses in Section 1, unless otherwise
specified in writing by the respective party.

**37. NO ASSIGNMENT:**
This Contract shall not be assigned without the written consent of Seller. This means that Buyer may not transfer to anyone else Buyer's
rights under this Contract to purchase the Property.

**38. ELECTRONIC SIGNATURES AND DOCUMENTS:**
Buyer and Seller agree that the New Jersey Uniform Electronic Transaction Act, N.J.S.A. 12A:12-1 to 26, applies to this transaction,
including but not limited to the parties and their representatives having the right to use electronic signatures and electronic documents that
are created, generated, sent, communicated, received or stored in connection with this transaction. Since Section 11 of the Act provides
that acknowledging an electronic signature is not necessary for the signature of such a person where all other information required to
be included is attached to or logically associated with the signature or record, such electronic signatures, including but not limited to an
electronic signature of one of the parties to this Contract, do not have to be witnessed.

**39. CORPORATE RESOLUTIONS:**
If Buyer or Seller is a corporate or other entity, the person signing below on behalf of the entity represents that all required corporate
resolutions have been duly approved and the person has the authority to sign on behalf of the entity.

**40. ENTIRE AGREEMENT;PARTIES LIABLE:**
This Contract contains the entire agreement of the parties. No representations have been made by any of the parties, the Broker(s) or its

New Jersey Realtors® Form 118-Statewide 1/18  Page 12 of 13

Buyer's Initials: _____
Seller's Initials: _____

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B

659  salespersons, except as set forth in this Contract. This Contract is binding upon all parties who sign it and all who succeed to their rights
660  and responsibilities and only may be amended by an agreement in writing signed by Buyer and Seller.
661
662  **41. APPLICABLE LAWS:**
663  This Contract shall be governed by and construed in accordance with the laws of the State of New Jersey and any lawsuit relating to
664  this Contract or the underlying transaction shall be venued in the State of New Jersey.
665
666  **42. ADDENDA:**
667  The following additional terms are included in the attached addenda or riders and incorporated into this Contract (check if applicable):
668  ☐ Buyer's Property Sale Contingency                  ☐ Private Well Testing
669  ☐ Condominium/Homeowner's Associations               ☐ Properties With Three (3) or More Units
670  ☐ FHA/VA Loans                                       ☐ Seller Concession
671  ☐ Lead Based Paint Disclosure (Pre-1978)             ☐ Short Sale
672  ☐ New Construction                                   ☐ Underground Fuel Tank(s)
673  ☐ Private Sewage Disposal (Other than Cesspool)
674
675  **43. ADDITIONAL CONTRACTUAL PROVISIONS:**
676  **1. This contract is subject to an order of the United States Bankruptcy Court for the District of New Jersey entering an order in a**
677  **bankruptcy case of Seller approving a sale by Seller to Buyer within 45 days of the date of this contract. The date of closing shall**
678  **be amended to five business days after the entry of said order.**
679
680
681
682
683
684
685
686
687
688
689
690  **WITNESS:**
691
692  _____        _____    BUYER  **Bartosz Ciszkowski**    7/26/2018  8:28:22 PM PI
                                                                                                            Date
693
694  _____        _____    BUYER                            _____
                                                                                                            Date
695
696
697  _____        _____    BUYER                            _____
                                                                                                            Date
698
699
700  _____        _____    BUYER                            _____
                                                                                                            Date
701                                                                                                          8/2/2018
702
703  _____        _____    SELLER  **Jonas Werner Construction Llc**    _____
                                                                                                            Date
704
705
706  _____        _____    SELLER                           _____
                                                                                                            Date
707
708
709  _____        _____    SELLER                           _____
                                                                                                            Date
710
711
712  _____        _____    SELLER                           _____
                                                                                                            Date
713
714
715
716
717
718

New Jersey Realtors® Form 118-Statewide 1/18  Page 13 of 13

Buyer's Initials: _____    Seller's Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

44 Echo Ridge Rd

DocuSign Envelope ID: 2045C9A0-BCE9-4276-AB55-0229B812212B



# WIRE FRAUD NOTICE

© 2018 New Jersey REALTORS®

**PROTECT YOURSELF FROM BECOMING A VICTIM OF WIRE FRAUD**. Wire fraud has become very common. It typically involves a criminal hacker sending fraudulent wire transfer instructions in an email to an unsuspecting buyer/tenant or seller/landlord in a real estate transaction that appears as though it is from a trusted source, such as the victim's broker, attorney, appraiser, home inspector or title agent. The email may look exactly like other emails that the victim received in the past from such individuals, including having the same or a similar email address, accurate loan and other financial information, and the logo of one of those individuals. If the hacker is successful, the victim will follow the bogus instructions to wire money, such as deposit money or payment of an invoice, to the hacker's account. Once this money has been wired, it may not be possible to recover it.

We strongly recommend that, **before** you wire funds to any party, including your own attorney, real estate broker or title agent, you **personally call** them to confirm the account number and other wire instructions. You only should call them at a number that you have obtained on your own (e.g., from the sales contract, their website, etc.) and should **not** use any phone number that is in any email - **even if the email appears to be from someone you know**.

If you have any reason to believe that your money was sent to a hacker, you must immediately contact your bank and your local office of the Federal Bureau of Investigation, who can work with other agencies to try to recover your money, to advise them where and when the money was sent. You also should promptly file a complaint with the Internet Crime Center at bec.ic3.gov.

Finally, since much of the information included in such fraudulent emails is obtained from email accounts that are not secure, we strongly recommend that you not provide any sensitive personal or financial information in an email or an attachment to an email. Whenever possible, such information, including Social Security numbers, bank account and credit card numbers and wiring instructions, should be sent by more secure means, such as by hand delivery, over the phone, or through secure mail or overnight services.

**By signing below, you indicate that you have read and understand the contents of this Notice:**

Seller/Landlord: _____    Date: 8/2/2018 _____
Jonas Werner Construction Llc

Seller/Landlord: _____    Date: _____

Buyer/Tenant: _____    7/26/2018 8:28:22 PM PDT Date: _____
Bartosz Ciszkowski

Buyer/Tenant: _____    Date: _____





New Jersey REALTORS® | Wire Fraud Notice | 05/18

# RIDER TO CONTRACT OF SALE

Buyer:         Bartosz Ciszkowski

Seller:        Jonas Werner Construction, LLC

Premises:      44 Echo Ridge Road, Upper Saddle River, New Jersey

1. Quality of Title: Title shall be taken free of easements, except for public utility easements. If there are other easements, the Buyer may cancel the Contract and receive his deposit back. Title shall be taken subject to restrictions of record, if any, provided the premises are not in violation thereof, provided same do not hinder use of the property as a one (1) family residence, and provided violation of same will not cause a forfeiture or reversion of title. Title shall also be taken subject to such a state of facts as an accurate survey would disclose, provided the facts do not render title unmarketable. The Buyer may cancel this Contract and receive a full return of his deposit if any easement, restriction, or facts disclosed by an accurate survey would interfere with the use of the property as a one (1) family residence. Title shall be insurable at regular rates by a title company licensed to do business in New Jersey free and clear of all liens and encumbrances. This paragraph supplements section 11 of the Contract. Lines 502-503 in section 26 from "and one-half. . . .Commissioner of Insurance" are deleted from the Contract. Buyer will be responsible for any and all title company charges and fees as it pertains to the closing of title, settlement and related disbursements.

2. Bankruptcy Court Approval: This transaction is contingent on the approval of the United States Bankruptcy Court, District of New Jersey ("Court"), approving same with payment of all necessary closing costs and approving utilization of Joshua Baris of Coldwell Banker as the realtor ("Realtor"). Seller and Purchaser acknowledge that, under the Bankruptcy Code, sale of the Property is, and the respective obligations of Seller and Purchaser under this Contract are, subject to United States Bankruptcy Court approval and a final, non-appealable Order from the Bankruptcy Court. Seller and Purchaser acknowledge that to obtain such approval the Seller must demonstrate that it has taken reasonable steps to obtain the highest and best price possible for the Property, including but not limited to, establishing that the Purchaser is a good faith Purchaser, giving notice of the transaction contemplated by this Agreement to creditors and other interested parties, providing information about the Property to responsible bidders, entertaining higher and better offers from responsible bidders and, if necessary, conducting an auction. The Seller shall make prompt application of same to the court and provide the Buyer's attorney with copies of all filings and keep the Buyer's attorney informed of the status of the application. Same will be at no cost to the Buyer. If the application is denied or is not approved by sixty (60) calendar days from the end of attorney review the Buyer may terminate the Contract and receive a prompt return of his deposit. The Seller will give the Buyer's attorney a copy of any filed court Orders immediately upon receipt. Closing shall take place five (5) business days after expiration of the appeal period after entry of the Order approving the transaction and appointing the realtor. If an appeal is filed, the Seller will notify the Buyer's attorney of same immediately after learning of its filing and the Buyer may then terminate the Contract and receive a prompt return of his deposit. The deposit shall not be considered an asset of the Seller in the

3645354_1

bankruptcy proceeding. The Seller will also comply with all reasonable requirements of the Buyer's title insurance company regarding the bankruptcy. Section 43 of the Contract is deleted.

3.  Improvements/Certificate of Occupancy: The Seller represents that, during its ownership without any independent investigation, all improvements made to the premises were done in accordance with all applicable laws and ordinances and with all necessary permits and approvals, that there are no variances affecting the premises, and no historical designation of the premises. Buyer shall be responsible for obtaining the Certificate of Occupancy, or other similar certificate required by the Borough of Upper Saddle River for the transfer of the property to Buyer, only up to an aggregate cost of $1,000. Any cost incurred in excess of $1,000 may be paid by Seller. If the cost to obtain the Certificate of Occupancy in the aggregate exceeds $5,000 either party may terminate the contract.

4.  Tenants: The premises shall be vacant and free of any tenancies at the time of closing. Seller has never occupied or resided in the Property.

5.  Closing: The Closing shall may be held at the offices of McElroy, Deutsch, Mulvaney & Carpenter, LLP or conducted via overnight mail, no later than twenty (20) days after the sale hearing at the United States Bankruptcy Court approving this sale pursuant to 11 U.S.C.§363(b) and (f).

6.  Closing Documents: The Seller shall provide the Buyers at closing with a Quit Claim Deed and an Affidavit of Consideration..

7.  Maintenance and Condition of Property: The Seller shall deliver to the Buyers at closing all keys, garage controls, and all guarantees/warranties relating to the premises and the appliances and systems therein, if any. The premises shall be vacant and in broom clean condition at closing and in the same condition as at the time the Contract is signed, subject to the inspection contingency. The Seller represents there have been no leaks or seepage into, from or within the premises and there will be none at closing. All appliances shall be in normal working condition at closing.

8.  Purchase Price:. The purchase price is $598,888.00. At Closing, the Seller will convey, subject to an order of the United States Bankruptcy Court for the District of New Jersey, pursuant to 11 U.S.C. §363 and Federal Rules of Bankruptcy Procedure 6004 and 9014, fee simple title insurable at regular rates.

As a deposit, the sum of ten percent (10%) of the Purchase Price, (the **"Deposit"**), shall be paid to Seller's counsel as escrow agent by certified check or wire transfer upon mutual execution of this Agreement, which Deposit shall be held in a segregated non-interest bearing escrow account at Lakeland Bank (the **"Escrow Account"**).

9.  Brokerage Commissions. Buyer indemnifies and agrees to hold harmless Seller and the Seller's Court-approved real estate consultant, Coldwell Banker Residential Brokerage ("Realtor or Coldwell") from and against any and all claims, loss, liability, costs and

3645354_1

expenses, including reasonable attorney's fees, resulting from any claim that may be made against Seller by any broker or other person claiming a commission, fee or other compensation by reason of this transaction, if the same shall arise by or on account of any act of Buyer or Buyer's representatives.

Seller indemnifies and agrees to hold harmless Buyer from and against any and all claims, loss, liability, costs and expenses, including reasonable attorney's fees, resulting from any claim that may be made against Buyer by any broker or other person claiming a commission, fee or other compensation by reason of this transaction, if the same shall arise by or on account of any act of Seller or Seller's representatives.

The representations made by Buyer and Seller in this Paragraph 9 shall survive the Closing.

10. Environmental Matters: The Seller represents that during its ownership without any independent investigation, the following have never been present on the property.

      A. Environmental contamination;
      B. An oil tank;
      C. A septic system;
      D. A water well; or
      E. A cesspool.

If any of the above are found on the property the Buyers may terminate the Contract and receive their deposit back. The second box in lines 246 and 254 and the first box in line 261 of the Contract are deemed to be checked.

11. **Physical Condition of the Property.** Other than as expressly set forth herein in the Contract and Rider, the Property is being sold on a strictly "AS IS, WHERE IS" basis, WITH ALL FAULTS. Neither the Seller nor any of Seller's agents make any claims, representations, warranties, or promises about the condition or the value of the Property included in the sale. SELLER EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS OR IMPLIED WARRANTIES, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF FITNESS, HABITABILITY, OR MERCHANTABILITY.

12. **Merger of All Prior Understandings; Property to be Accepted "AS IS".** It is understood and agreed that all understandings and agreements heretofore had between Seller, its agents, and Buyer are merged in this Contract of Sale, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation not embodied in this Contract, made by the other. Buyer represents that he has inspected the Property to his satisfaction, that he has independently investigated, analyzed and appraised the value and profitability thereof, that he has reviewed all documents referred to herein or in Exhibits annexed hereto (other than those which will not be prepared or available to Buyer until the Closing), that he is thoroughly acquainted with all of the above and that he agrees to accept the Property "AS IS," and in its present condition, subject to the reasonable use, wear and tear and natural deterioration between the date hereof and the date of the Closing. Buyer expressly acknowledges that,

3645354_1

except as expressly provided herein, neither Seller nor any agent or representative of Seller has made, and Seller is not liable for or bound by in any manner, any express or implied warranties, guarantees, promises, statements, inducements, representations or information pertaining to any document referred to herein or in any Exhibit annexed hereto or the Premises or any other matter or thing with respect thereto, except as otherwise stated in the Contract and Rider.

13. **Waiver of Environmental Claims.**  Buyer, by paying the consideration for a deed of the Property at Closing, shall be deemed to release Seller and, the Seller's retained professionals and any predecessors-in-title (collectively, the "**Released Parties**") from, and to waive as against the Released Parties, all claims of liability for or attributable to any environmental condition of the Land or Improvements, including without limitation any claim or lawsuit under any local, state or federal law, rule, ordinance or regulation relating to environmental contamination or other environmental matters, and from and after a Closing hereunder, Buyer and its successors and assigns shall be deemed to have assumed and taken responsibility for, and shall defend, indemnify and hold the Released Parties harmless from and against, all losses, costs, claims liabilities, expenses, demands and obligations attributable to the environmental condition of the Land and Improvements.  The provisions of this Paragraph 13 shall survive Closing under this Contract, and shall be incorporated in the deed to be delivered to Buyer as a covenant running with the Land which shall be binding on all subsequent owners of the Property.

14. **No Mortgage Contingency; Buyer Financially Able to Close.**  This Contract shall not be contingent upon Buyer obtaining a mortgage.  Buyer represents that Buyer has sufficient cash available to complete the purchase of the Property.

15. **Buyer's Warranties and Representations.**  The Buyer represents that it has disclosed its true identity and that it has no affiliation with the Seller and Coldwell.  Buyer also represents that it has no personal and/or business relationships with, connections to, and/or understandings and agreements with the Debtor.

16. At Closing Seller will provide the applicable NJ Residency Form to be recorded with the Quit Claim Deed.  Seller represents it will not be subject to a FIRPTA withholding at closing.

17. Default:

   A. **By Seller.**  In the event the Bankruptcy Court determines that a willful default by Seller has occurred hereunder, the sole remedy of Buyer shall be to terminate this Contract and receive back the Deposit.  If Seller is unable to convey title to the Buyer in accordance with this Contract, Seller's sole liability shall be the refund of all moneys paid to Seller by Buyer on account of this Contract.  Upon such refund and payment, this Contract shall be considered cancelled and neither party shall have any further rights against the other.  Nothing herein shall be deemed to require the Seller to institute any proceeding to clear any title objection.

3645354_1

B. **By Buyer**. In the event of a default by Buyer hereunder, the sole remedies of Seller shall be to ~~either (i) retain the Deposit as liquidated damages in full or final settlement of all claims between the parties hereto, or (ii)~~ seek damages in a court of competent jurisdiction. In ~~the~~ such event that Seller shall elect to seek damages, the Deposit shall be retained by Seller's counsel as escrow agent pending the order of the United States Bankruptcy Court.

18. Risk of Loss: Section 24 of the Contract is amended to state that if there is a loss to the property which would cost more than ten percent (10%) of the purchase price to repair, the Buyer may terminate the Contract and receive his deposit back.

19. Errors: If any errors in the HUD-1 Settlement Statement are discovered after closing, the parties agree to rectify same within ten (10) calendar days. The terms of this section shall survive closing.

20. Dates and Times for Performance: Section 8 of the Contract is deleted.

21. No Automatic Waivers: No contingency shall be deemed waived by the passage of time. One party may enforce a time period on the other party by that party's attorney sending written notice to the other to enforce the time period on three (3) business days' notice, except for Time of the Essence which shall be ten (10) calendar days.

22. Megan's Law: The Seller represents it has received no notices pursuant to Megan's Law.

23. Land Use: The Seller represents it has received no notices of any land use applications being filed with any governmental land use board which is still pending.

24. Notice: Supplementing section 36 of the Contract, notice may be given between the parties' attorneys.

25. Inspections: The home inspection contingency is limited to environmental matters only, subject to sections 8 and 19 of this Rider.

26. Stucco: The Seller represents without independent investigation there is no EIFS stucco on the premises. If any EIFS stucco is found, the Buyer may terminate the Contract during the inspection contingency period and receive a prompt return of his deposit.

27. Seller: The Seller represents it is a validly existing limited liability entity in New Jersey whose charter is in full force and effect and which has not been revoked, and whose franchise taxes, if applicable, are paid in full to date. The Seller will provide the Buyer's title insurance company with a complete copy of its signed Operating Agreement and any amendments thereto, and with any other documentation reasonably required by the Buyer's title insurance company.

3645354_1

28.    Governing Law:  This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of New Jersey, and before the courts of the State of New Jersey.  Jurisdiction is retained by the United States Bankruptcy Court with respect to all matters arising from this Agreement. The parties agree to submit to the exclusive jurisdiction of the United States Bankruptcy Court.

29. Rider: Where the terms of this Rider differ from those in the Contract, the terms of this Rider shall govern.


_____    _____
Bartosz Ciszkowski, Buyer                                 Date


JONAS WERNER CONSTRUCTION, LLC

_____    August 17, 2018
By:                            , Managing Member    Date
Seller
Authorized Signatory